HAWKEYE SECURITY INSURANCE CO., Plaintiff, *v.* PETER HODOROWICZ *et al.*, Defendants.—(PETER HODOROWICZ, Indiv. and d/b/a Atco Heating & Sheet Metal Co., Counterplaintiff-Appellant, *v.* TRANSAMERICA INSURANCE CO., Counterdefendant-Appellee.)

First District (4th Division)    No. 79-1613

Opinion filed May 29, 1980.

James L. Allegretti, of Chicago, for appellant.

Victor J. Piekarski, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

In January of 1975, Anthony and Lee Stephens filed a complaint against the defendant and counterplaintiff, Peter Hodorowicz d/b/a Atco Heating & Sheet Metal Co. (Atco), alleging that in January of 1967 Atco negligently installed a gas furnace in their dwelling and that the negligence caused a fire. An amendment to the complaint added the allegation that Atco impliedly warranted the fitness and quality of the work performed and that the breach of that warranty caused the fire.

Atco asked the plaintiff, Hawkeye Security Insurance Company (Hawkeye), to provide a defense to the suit. Hawkeye responded by filing a complaint for declaratory judgment. Hawkeye's complaint alleged that the policy under which it insured Atco was for the period of June 1, 1966, through June 1, 1967, and that the defendant and counterdefendant, Transamerica Insurance Company (Transamerica), had issued a liability policy to Atco covering the period of June 13, 1974, to June 13, 1977. Hawkeye asked the court to find that it had no duty to defend or indemnify Atco in the Stephens' suit. Atco then filed a counterclaim against Transamerica asking the court to order Transamerica to defend it in the Stephens' suit. Transamerica answered with an affirmative defense stating the policy did not cover the alleged damages.

Hawkeye and Transamerica each moved for judgment on the pleadings. Both motions were granted. The trial court denied Atco's post-trial motion and Atco appeals from that order. Hawkeye is not a party to this appeal.

■■ The policy under which Transamerica insured Atco includes a page headed "Exclusions" and states in part that "[t]he insurance afforded by the policy for the coverages designated below does not apply to any damages for the coverage stated herein with respect to the specified hazards." One of the "specified hazards" which has been typed on the form is "Products and Completed Operations." This is defined in the following terms:

> " 'Completed Operations Hazard and Products Hazard' means the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property

damage included within the Completed Operations Hazard or the Products Hazard, and that Exclusion (d) 7 is amended to exclude property damage to work performed by or on behalf of the named insured arising out of work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." The policy does not appear to contain any further definition of the "Completed Operations Hazard" or "Products Hazard."

An authority on insurance law explains the difference between premises-operations coverage, which was clearly encompassed by the Transamerica policy, and coverage for completed operations and products liability:

"[O]nce a product has been completed and sent to market, or a service has been performed * * * the premises-operations coverage is not an appropriate coverage and the individual now needs 'products liability' or 'completed operations' coverage. The coverages are complementary and not overlapping and the premiums are separate and distinct. The premium charged for either coverage would be inadequate to cover both hazards." 7A J. Appleman, Insurance Law and Practice §4508, at 341 (Berdal ed. 1979).

Atco argues the exclusion for completed operations is ambiguous for two reasons. First, it contends the language of the exclusion itself is unclear. Secondly it claims the exclusion is inconsistent with a number of other policy provisions.

Atco contends that on the page entitled "Liability Schedule and Premium Recap." the premiums to be paid for "Premises-Operations" is "based upon the amount of Atco's sales." Atco argues this fact means Atco reasonably believed it would be paying premiums for coverage of completed operations.

We are not persuaded by this argument. The page referred to by Atco provides that the premium bases for sheet metal work and plumbing are, respectively, $30,000 and $15,000. Next to these figures is noted "a" which is defined at the bottom of the page as "per $100 payroll" while "b" is defined as "per $1,000 receipts." It is thus clear that the premiums were based upon the size of Atco's payroll rather than upon the amount of sales.

At oral argument Atco also contended that certain language on the "premium recap." page, providing that a covered hazard is "Sheet Metal Work—erection, installation or repair-shop and outside," gave Atco reason to believe that it was insured for off-premises liabilities. While we agree that the language indicates that some "off premises" occurrences come within the policy coverage, we cannot say that the language gave

Atco reason to believe that a fire arising from an operation completed off the premises seven years earlier would be covered, particularly where "Completed Operations" is expressly excluded by the policy.

Atco next argues an ambiguity is created by a statement found on the "Blanket Liability Coverage Supplement" which provides as follows:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence."

Atco argues under this provision the time of the damage rather than the time of the negligence determines whether an "occurrence" is covered by the policy, and that because the fire occurred during the time covered by the Transamerica policy there is a duty to defend.

The fact that the "occurrence" took place during the effective dates of the policy does not, in and of itself, establish coverage. The language relied on by Atco limits coverage for occurrences to "bodily injury or property damage to which this insurance applies." Because completed operations coverage is excluded, we believe occurrences arising out of completed operations were also intended by the parties to be excluded.

Atco next argues the allegation of breach of an implied warranty is encompassed by the policy's coverage. In making this argument it relies upon the following language found in the "Blanket Liability Coverage Supplement":

> "This insurance does not apply: to bodily injury or property . damage with respect to liability assumed by the insured under any contract or agreement not in writing, except a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."

Transamerica concedes that Uniform Commercial Code warranties are not excluded by this language and states there would be coverage for warranties *arising during* the policy period. However, Transamerica further contends this is not a warranty which arises during the policy period because the alleged breach occurred upon tender of delivery seven years earlier.

Other courts have considered issues similar to the one raised here and have concluded that the exception to an exclusion does not provide an additional basis of coverage. For example, in *St. Paul Fire & Marine Insurance Co. v. Coss* (1978), 80 Cal. App. 3d 888, 145 Cal. Rptr. 836, the contractor/insured argued that an exclusion for contractual liability granted coverage for a warranty of fitness. The policy in *Coss* provided in part "but this exclusion does not apply to * * * a warranty that work

performed * * * will be done in a workmanlike manner * * *." (80 Cal. App. 3d 888, 895, 145 Cal. Rptr. 836, 840.) The court concluded that the exception

"* * * merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy." 80 Cal. App. 3d 888, 896, 145 Cal. Rptr. 836, 841. See also *Haugan v. Home Indemnity Co.* (1972), 86 S.D. 406, 197 N.W.2d 18, *Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guaranty Co.* (1977), 76 Cal. App. 3d 272, 142 Cal. Rptr. 681, and *Biebel Brothers v. United States Fidelity & Guaranty Co.* (8th Cir. 1975), 522 F.2d 1207, each interpreting language identical to that found in *Coss* and each finding against the insured on that issue.

Although the warranty exception to the exclusion which we here consider is not identical to that contained in the above-cited cases, we believe a similar result is required. An insurance contract, like any other contract, must be interpreted from an examination of the complete document and not an isolated part. (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873.) The exclusion containing the warranty language must be examined in light of the exclusion for products and completed operations. The breach of warranty allegation involves a warranty allegedly made in connection with the installation of a furnace, clearly a completed operation. Under these circumstances, we cannot accept the argument that the insured was led to believe that it had coverage for a warranty made in connection with a completed operation where the completed operation itself was clearly excluded.

Atco also contends Transamerica is estopped from denying coverage because it did not defend Atco under a reservation of rights while securing the declaratory judgment.

■■ When the insurer refuses to defend an action which, on the face of the complaint, is within the coverage, the insurer breaches its duty to defend and is thus estopped from raising issues of policy coverage. (*Cowan v. Insurance Co.* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315.) However, an insurer has a duty to defend only when the complaint alleges facts which bring the case within or potentially within the policy coverage. (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) It therefore follows that where an insurer has not breached any duty to defend a claim against its insured, the insurer is not estopped from raising a policy defense. (*Country Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 239 N.E.2d 498.) In light of our conclusion that the allegations of negligence and breach of warranty do not come within the policy

coverage, Transamerica had no duty to defend Atco and is not estopped from denying coverage.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and ROMITI, J., concur.