GENE T. TAPP *et al.*, Plaintiffs-Appellants, *v.* WRIGHTSMAN-MUSSO IN-
SURANCE AGENCY *et al.*, Defendants.—(Aetna Casualty and Surety Com-
pany of Illinois, Defendant-Appellee.)

Fourth District No. 17603

Opinion filed October 13, 1982.

GREEN, P.J., specially concurring.

Durbin & Lestikow, of Springfield (Richard J. Durbin, of counsel), for appellants.

Gillespie, Cadigan & Gillespie, of Springfield (Patrick J. Cadigan, of counsel), for appellee.

JUSTICE TRAPP delivered the opinion of the court:

The trial court entered a judgment on the pleadings finding that Aetna Casualty and Surety Company had no duty to defend the insured Greff and Dodson in plaintiffs' action. Plaintiffs, as assignees of the rights and claims of Greff under a policy issued by Aetna, appeal.

Plaintiffs filed a complaint against Kenneth Greff, Donald D. Dodson and others on September 8, 1980. Counts VII and VIII of this complaint were the only counts against Greff and Dodson. A contract for the sale of a building by defendant, Kamar, to defendants, Greff and Dodson, as partners, was attached to the complaint as an exhibit. Subsequently, plaintiffs filed count XIII of their fourth amended complaint against defendant, Aetna. This count alleged that Aetna insured certain property of defendants, Greff and Dodson, by a policy which was in effect on September 30, 1978.

On September 30, 1978, Greff began dismantling the building, then located at the Farm Progress Show near Taylorville, Illinois, for relocation of the building as a storage facility in Virden, Illinois. During this dismantling operation, plaintiff, Gene Tapp, who voluntarily assisted Greff and Dodson, was injured. The complaint also alleged damages to Margie Tapp. The initial complaint against Greff was referred to defendant, Aetna, as a tender of defense. Defendant Aetna informed Greff it would not defend him.

It was alleged that a default judgment was entered against Greff on December 29, 1980. On February 27, 1981, Greff executed a document whereby he assigned to the plaintiffs all of his right, title, and interest in his policy with Aetna and all claims, demands, and causes of action arising out of the injuries sustained by plaintiffs. Plaintiffs, as assignees of the insurance policy, alleged that Aetna was obligated to provide a defense to defendant Greff on the initial complaint, and defendant denies this duty. Therefore, there was an actual controversy between the parties, and plaintiffs prayed for a declaration of rights under the policy, and a finding that defendant Aetna was liable for $300,000 and expenses.

On August 27, 1981, Aetna filed a motion to dismiss under sections 45(1) and 48(1) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 45(1) and 48(1)). Attached as exhibit A was the initial complaint against Greff and Dodson.

On October 30, 1981, the court granted the motion in favor of Aetna. It further stated that although there were multiple parties involved in the case, the claim for relief could proceed without all parties being present and there was no just reason for delaying enforcement or appeal of the order.

In plaintiffs' count XIII of the fourth amended complaint, plaintiffs contend defendant was obligated to provide a defense to defendant Greff because the policy provides:

> "*** the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ***."

■■■ The general law in cases such as this is well defined. If the complaint reveals a potential for coverage by the policy, but the insurer believes that it has a valid exclusionary coverage defense, then the insurer must either (1) secure a declaratory judgment of its rights while defending the potential insured under a reservation of rights, (2) defend the potential insured under a reservation of rights and adjudicate its coverage in a supplemental suit, or (3) defend without a reservation of right. (*Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914.) The insurer is obliged to defend where the complaint alleges a state of facts within the coverage of the policy, even if there is only potentially a case under the complaint within the coverage of the policy. (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) The complaint must be liberally construed and all doubts as to coverage must be resolved in favor of the insured. *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.

The opinion in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 144-45, 384 N.E.2d 335, 340, states:

> "When the insurer wrongfully refuses to defend a complaint which alleges facts within coverage, it is liable to the insured for breach of contract. [Citation.] The measure of damages for such a breach is generally the amount of the judgment against the insured or of a reasonable settlement, plus any expenses incurred."

Where the company has already breached a contract by failing to defend where the facts alleged reveal potential coverage, the insurer no

longer has any right to insist that the insured be bound by the exclusion provisions. *Sims.*

In *Christensen v. Wick Building Systems, Inc.* (1978), 64 Ill. App. 3d 908, 912, 381 N.E.2d 1189, 1192, the court stated:

> "In deciding a motion for judgment on the pleadings, the court must determine whether the pleadings present a material issue of fact [citation], and if the pleadings present such an issue, the motion must be denied. The motion for judgment on the pleadings concedes the well-pleaded facts in the opposing pleadings [citation], concedes all fair inferences therefrom [citation], and concedes that the movant's own allegations are false in so far as they have been controverted by opposing pleadings [citation]. A motion for judgment on the pleadings does not test whether there is any evidence to support the pleading, for that is the province of a motion for summary judgment."

Various arguments are advanced in support of each parties' position by comparing portions of the initial complaint with the insurance policy. Only those arguments relying upon counts VII and VIII, the counts against Greff and Dodson, are relevant. Of these arguments, we need only address three to dispose of the case.

Aetna relies initially upon exclusion (g) of the policy for its conclusion that there is not even potential coverage. Exclusion (g) provides:

> "This insurance does not apply:
>
> * * *
>
> (g) to bodily injury or property damage arising out of operations on or from premises (other than insured premises) owned by, rented to or controlled by the named insured, or to liability assumed by the insured under any contract or agreement relating to such premises; ***."

The initial complaint alleges the existence of a contract to purchase a building near Taylorville, which was to be dismantled and removed from those premises. The policy designates the insured premises as "one acre southwest corner of Church and George Street, Virden, Illinois-storage of truck and tractors."

In Aetna's letter to Greff denying coverage, Aetna asserted that the injury arose out of operations controlled by Greff and out of the dismantling of a building owned by Greff. Therefore, exclusion (g) applied. Plaintiffs do not challenge the fact that the building was located and the injury occurred at a place other than the designated insured premises. Their only response to this argument is the assertion that it was alleged the building was not owned by Greff at the time of the injury. It is not necessary to consider defendants' response since there

are sufficient allegations that the premises were "controlled" by Greff and Dodson.

Aetna cites paragraphs three, four and six of count II, which were incorporated into counts VII and VIII against Greff and Dodson. Those paragraphs alleged the existence of Greff and Dodson's contract to buy the Taylorville building, and alleged that under the terms of the contract the buyers were to dismantle the building, provide certain materials to Kamar from the dismantled building, and remove the building from the premises. Although these allegations refer only to what Greff and Dodson were supposed to do under the contract, those counts continue to allege that defendants asked Tapp to assist them in the dismantling of the building and that Tapp was injured while dismantling the building. Thus, counts VII and VIII necessarily infer Greff and Dodson were in control of the building and responsible for preventing such injuries. Since Greff and Dodson controlled the premises and operations from which the bodily injury arose, exclusion (g) applied and Aetna had no duty to defend.

Plaintiffs advance two arguments in support of potential coverage, notwithstanding the language of exclusion (g).

They first argue coverage under the following provision describing property covered by the policy:

> "Building(s) or structure(s) shall include attached additions and extensions ***; materials and supplies intended for use in construction, alteration or repair of the building(s) or structure(s); ***; all while at the designated premises."

Plaintiffs' argument concerning this provision vaguely asserts that the injury was caused by, or occurred, while using materials and supplies intended for use in construction of the building. Whatever merit there otherwise may have been to this argument, Aetna points out that the last portion of the provision modifies the coverage by stating "all while at the designated premises." Since the materials involved here were near Taylorville, Illinois, rather than at the designated premises in Virden, Illinois, the provision is literally inapplicable. Defendant aptly points out that without this last qualifying phrase any materials purchased at a retail store would be covered by the insurance policy even while still in the store. We find no merit in plaintiffs' argument.

Finally, plaintiffs assert potential coverage under the following provision:

> "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and arising out of

the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises \*\*\*."

Plaintiffs assert the activity in Taylorville arose out of the "maintenance or use" of the building to be located in Virden; was "necessary and incidental" to the business of the insured; and was conducted "from" the insured premises in Virden. Therefore, they conclude this provision brings the activity within the coverage of the policy.

Aetna argues that there are no allegations in the initial complaint alleging facts which would alert it to the contention that the operation was related to the insured premises, or business, of the insured.

A reading of counts VII and VIII shows only that Greff and Dodson entered into a contract to buy a building which they intended to dismantle and that plaintiff Gene Tapp was injured during the dismantling of this building. There is absolutely no reference in the allegations to the property at Virden or the business of storing trucks. From the allegations themselves, the insurance company had absolutely no indication that the actions were in any way related to the Virden property, or the truck storage business. The contract itself gives the address of the purchasers as 131 Liberty Street, Virden, Illinois. It contains no references to the relocation site of the building. The designated premises are on the corner of Church and George streets in Virden, Illinois. There is no indication anywhere that Liberty Street, the address of the purchaser, is anywhere near the corner of Church and George streets.

Plaintiffs argue that since the complaint did not exclude the possibility that the circumstances surrounding the injury were related to the insured property and business purpose, such actions were potentially related to such insured premises and business. Therefore, defendant was obligated to provide a defense to the potential insured. Although case law does state that the lack of coverage must be absolutely clear when comparing the complaint with the policy for an insurer to refuse to defend with impunity, we believe this broad statement of law presumes that the complaint gives some indication there is a reason to believe the insurance policy is relevant to the alleged facts. The allegations of counts VII and VIII give absolutely no indication that the dismantling of the building in Taylorville was in any way related to the insured premises, or the business of the insured. Therefore, defendant was not alerted by the allegations to any potential coverage under the above provision, and we need not determine whether the activities would otherwise come within the terms of this provision.

For the foregoing reasons, we conclude there was no alleged state of facts which were even potentially covered by the policy, and therefore the judgment of the trial court is affirmed.

Affirmed.

WEBBER, J., concurs.

PRESIDING JUSTICE GREEN, specially concurring:
I concur in the decision to affirm the circuit court.

I agree that the pleadings before the court showed conclusively that Greff and Dodson had control of the premises near Taylorville where the building was allegedly being demolished. Thus, as stated, exclusion (g) was conclusively shown to be applicable. It controlled over the provision of the policy otherwise giving coverage, and we need not decide whether the pleadings negated the evidence of potential coverage which might otherwise exist.

I take no position as to whether such potential coverage might exist in the absence of the operation of exclusion (g).