MILLERS MUTUAL INSURANCE ASSOCIATION OF ILLINOIS, Plaintiff-Appellant, v. AINSWORTH SEED COMPANY, INC., *et al.*, Defendants-Appellees (Cigna Companies *et al.*, Defendants).

Fourth District    No. 4—89—0087

Opinion filed September 28, 1989.—Modified on denial of rehearing March 28, 1990.

William F. Costigan, of Costigan & Wollrab, P.C., of Bloomington, for appellant.

William L. Hatch and Arnold F. Blockman, both of Hatch, Blockman, McPheters, Fehrenbacher & Lyke, of Champaign, for appellees.

JUSTICE GREEN delivered the opinion of the court:

This appeal is from a summary declaratory judgment determining a liability insurer has a duty to both defend and indemnify its insureds in regard to pending litigation. The principal legal question involved concerns the matters which may be considered in determining whether a duty to defend is shown, *i.e.*, whether the question of that duty should be determined entirely upon the basis of the terms of the insureds' policy and the allegations of the complaint in the pending litigation. We conclude that extrinsic facts may be considered as long as they do not bear upon issues in the underlying litigation. After considering such extrinsic information as was before the trial court at the time of the hearing on the summary judgment issue, we reverse the judgment on appeal.

On August 3, 1987, plaintiff Millers Mutual Insurance Association filed a complaint in the circuit court of Champaign County against others seeking a declaration as to its obligations under a policy of liability insurance it issued insuring defendants Ainsworth Seed Company, Inc. (ASC), R. Clayton Ainsworth, and their employees, in regard to litigation brought against those defendants and others in the circuit court of Mason County by defendant Sophia Cross. Plaintiff filed a motion seeking a summary judgment declaring it had no duty to defend or indemnify defendants ASC, Edmund Nunn, R. Clayton Ainsworth, or Frank Short. Later, the foregoing defendants filed a countermotion for a summary judgment declaring plaintiff was required to defend and indemnify them. On December 30, 1988, the court granted defendants' motion and denied plaintiff's motion. Plaintiff has appealed.

No dispute exists that plaintiff issued a policy of general liability insurance covering a period from July 1, 1985, to July 1, 1986, with ASC and R. Clayton Ainsworth as named insureds and with employees of ASC and R. Clayton Ainsworth also covered. Nor do the parties dispute that Nunn and Short are such employees. The complaint and amended complaint in the Mason County case brought by Cross allege she was injured on September 27, 1985, a date within the time frame of the policy which covers liability for personal injury or property damage occurring within those dates. Plaintiff maintains, however, that the "completed operations hazards" and "products hazards" exclusions of the policy prevent coverage here. On this basis, plaintiff maintains the circuit court erred in declaring plaintiff was re-

quired to defend and indemnify the various defendants and should have declared plaintiff had no such duties.

Copies of the complaint and amended complaint of Cross in the Mason County case are attached to both motions for summary judgment. As to ASC, the complaint alleges (1) prior to September 27, 1985, ASC was in the business of designing, manufacturing, installing, and servicing various machinery and equipment; (2) prior to that date ASC "designed, manufactured, sold, and installed" certain equipment "at the premises of De Kalb Pfizer Company (Pfizer) or its predecessor" on "Highway 10" in Mason County; (3) on or about the above date, Cross was employed by Pfizer and was using the aforesaid equipment when she was injured; (4) ASC was negligent in the design, installation, and construction of the foregoing equipment; and (5) that negligence was a proximate cause of the injuries to Cross.

The counts against Ainsworth, Nunn, and Short differ from those against ASC in that those counts charged those three defendants with negligently "designing, assembling, installing, or constructing" equipment for "Ainsworth Seed Company or its successors" with the "premises" involved being those "located at Highway 10, Mason County, Illinois." Otherwise, the same negligence with resulting injury to Cross while she was working there for Pfizer was alleged.

The confusion in the pleadings in the Mason County case is explained, to some extent, by the undisputed affidavit of R. Clayton Ainsworth which was presented to the court at the time of the hearing on the motion for summary judgment. In that document, he stated (1) a corn-sorting system was the equipment Cross was using when she was injured; (2) in 1969, when that system was installed, he, Nunn, and Short were employed by a firm also known as Ainsworth Seed Company and the system was installed in a "sorting building" owned by that firm; (3) through various name changes and mergers, that Ainsworth Seed Company became known as Pfizer Genetics, Inc., which has joined with De Kalb Corporation to form a partnership called De Kalb Pfizer Genetics; (4) it owns the building where the sorting system was being used and the "business" which was operating the system; and (5) the present defendant ASC was not begun until 1972 and has never owned or operated the sorting system or the premises upon which it sits. Ironically, plaintiff now relies upon the facts set forth in that affidavit to show the existence of facts establishing the completed-operations exclusion of the policy.

■ We first consider whether plaintiff owed a duty to defend. A general rule is recognized that the obligation of an insurer to defend an action brought against its insured must be decided by comparing

the allegations of the complaint against the insured with the terms of the policy. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) In some jurisdictions, this rule has not been followed when actual facts known to exist negate the duty to defend. (44 Am. Jur. 2d *Insurance* §1410, at 353-55 (1982).) In *Thornton*, the court stated the duty to defend was determined by the allegations of the complaint even if it were shown those allegations were not true, but drew an exception to the rule when the evidence showed collusion between the insured and the party suing the insured.

Plaintiff called our attention to the case of *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 461 N.E.2d 471. There, in a carefully drafted opinion, the Appellate Court for the First District held that in determining the duty of a liability carrier to defend an insured, a court may look beyond the allegations of the complaint in the underlying suit. However, that court held no consideration could be given to factual matters which might be relevant to issues in the underlying litigation. The *Envirodyne* court explained it had been unable to find any other Illinois case holding that matters outside the allegations of the underlying complaint could be so considered. The court then noted that in *Mid America Fire & Marine Insurance Co. v. Smith* (1982), 109 Ill. App. 3d 1121, 441 N.E.2d 949, matters not set forth in a complaint in an underlying suit had been considered in a similar declaratory judgment action to determine the questions of obligation to defend without the propriety of that consideration being raised. The *Envirodyne* opinion also noted *Thornton* had permitted consideration of facts not set forth in the underlying complaint under the special circumstances of that case.

In *Envirodyne*, an engineering firm was sued under the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69) for personal injuries received by a workman on a construction project. The engineering firm performed work on the project. The firm's insurer sought a declaratory judgment relieving it of liability to defend the action based upon a provision of the policy which excluded coverage for liability arising from consulting services. The appellate court held the trial court could properly consider extrinsic evidence of the nature of services performed by the engineering firm and could properly determine these services were entirely of a consulting nature. That court deemed the nature of those services to be immaterial in the underlying case where the possibility of liability of the engineering firm would depend upon the question of whether it was in charge of the work.

We find the *Envirodyne* opinion persuasive. Accordingly, we examine the allegations of the underlying complaint, the Ainsworth affidavit and the terms of the policy issued by plaintiff in the light of the theory of that case.

The instant policy defines the "completed operations hazards" in these words:

" 'Completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been *completed* or abandoned *and occurs away from premises owned by or rented to the named insured.* 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises *has been put to its intended use by any person or organization* other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies 'including completed operations.' " (Emphasis added.)

■■ In the underlying suit, the heart of the complaint is the allegation charging ASC and its employees with designing, manufactur-

ing, selling, and installing the "sorting system" to Pfizer or its successor and being negligent in the process. Absent other factors, this allegation would clearly show a duty on plaintiff to defend. However, the Ainsworth affidavit sets forth that prior to the injury to Cross, ASC had merged with another firm and, then, a partnership was formed which then owned the land, building, and fixtures which included the "sorting system" and continued that operation. Thus, the affidavit conclusively set forth that at the time of the injury to Cross, (1) "all operations to be performed by or on behalf of the named insured [ASC] at the site of the operation [had] been completed"; and (2) the injury occurred "away from premises owned by or rented to the named insured." As any alleged liability of ASC and its employees is based on conduct which ended with the installation of the "sorting system," subsequent occurrences covered by the Ainsworth affidavit would have no bearing on the liability of ASC and its employees. Accordingly, the foregoing matters, extraneous to the underlying complaint, constituted information to be considered in determining plaintiff's duties under the policy.

■ The Ainsworth affidavit also stated ASC, a defendant in the underlying suit, is not the same corporation as that of the same name which designed, manufactured, sold or installed the sorting equipment involved here. If that is correct, ASC cannot be held liable in the underlying case. However, if ASC is liable under the stated charges, such liability could only arise under circumstances whereby the "completed operations hazards" exception excludes coverage by plaintiff. Accordingly, we hold that exception is in effect here and relieves plaintiff of the obligation to defend under the policy in question here.

■ No necessity exists to determine whether an insurer has the duty to indemnify unless and until a judgment is obtained against the insured. Nevertheless, where, as here, the record indisputably shows any recovery against the insured would arise under circumstances whereby coverage is negated by the "completed operations hazard" exclusion of the policy, the insurer can never be under a duty to indemnify unless the allegations of the underlying complaint are changed. Plaintiff should also be released from the liability to defend.

If, at any time, plaintiff in the underlying case is ever permitted to amend her complaint in such a way as to (1) make her alleged cause of action subject to coverage under the instant policy, or (2) to put in issue in the underlying case, matters which are borne upon by allegations of the Ainsworth affidavit used to show the "completed operations" exclusion is applicable here, ASC and its employees will be entitled to new consideration of the question as to whether plain-

tiff has a duty to defend or indemnify. But, based on the present underlying allegation, the summary judgment appealed must be set aside.

The summary judgment against plaintiff is set aside and the cause is remanded to the circuit court of Champaign County with directions to enter summary judgment in favor of plaintiff finding it under no duty to defend or indemnify ASC, R. Clayton Ainsworth, or employees of ASC.

Reversed and remanded with directions.

LUND and KNECHT, JJ., concur.